UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| MONICA CAUDLE, | ) |
| Plaintiff | ) ) ) |
| vs. | ) Case No. 4:17-cv-00947-HNJ ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant | ) |

## **MEMORANDUM OPINION**

Plaintiff Monica Caudle seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding her claim for Supplemental Security Income (SSI). The undersigned has carefully considered the record, and for the reasons stated below, **AFFIRMS** the Commissioner's decision.

## **LAW AND STANDARD OF REVIEW**

To qualify for disability benefits and establish entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations[1] define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499. Although the Social Security Administration amended the regulations effective January 17, 2017, the

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is

---

amendment applies only to Social Security applications filed after the effective date, March 27, 2017. *Watkins v. Berryhill*, No. 7:16-CV-242-FL, 2017 WL 3574450, at *4 (E.D.N.C. Aug. 1, 2017), *report and recommendation adopted*, No. 7:16-CV-242-FL, 2017 WL 3568406 (E.D.N.C. Aug. 17, 2017); *Jordan v. Commissioner of Social Security*, 2017 WL 3034386 (N.D. Ohio July 18, 2017) (applying version of Listing 12.05(C) in effect at time of ALJ's decision, but finding error in ALJ analysis and remanding for new hearing and analysis under new version). Accordingly, the undersigned relies upon the prior versions in effect at the time of the ALJ's decision.

"severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. 20 C.F.R. § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairments would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if they suffer from a listed impairment. *See Jones*, 190 F.3d at 1228 ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the plaintiff has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). If the

claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to prove, considering claimant's RFC, age, education and past work experience, whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520(f)(1). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 404.1520(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. § 404.1520(a)(4)(v), (g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).

4

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Caudle protectively filed an application for SSI on January 5, 2016, alleging disability beginning July 18, 2015. (Tr. 18, 123). The Commissioner denied her claims, and Caudle timely filed a request for a hearing on April 26, 2016. (Tr. 96-98). The Administrative Law Judge ("ALJ") held a hearing on October 18, 2016. (Tr. 35-71). The ALJ issued an opinion denying Caudle's claim on January 30, 2017. (Tr. 15-30).

Applying the five-step sequential process, the ALJ found at step one that Ms. Caudle had not engaged in substantial gainful activity since January 15, 2016. (Tr. 20). At step two, the ALJ found that Ms. Caudle's impairments of obesity, borderline intellectual functioning, personality disorder, and depression were "severe" impairments during the relevant time period. (Tr. 20). At step three, the ALJ found that Ms. Caudle's impairments, or combination of impairments, did not meet or equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21).

Next, the ALJ found that Ms. Caudle exhibited the residual functional capacity ("RFC") to perform medium work with the following non-exertional limitations: the claimant can lift 50 pounds occasionally, but never climb ladder, crouch, or perform around workplace hazards. The claimant can understand, remember, and carry out simple instructions. She can sustain attention to routine and familiar tasks for extended periods. The claimant can tolerate ordinary work pressure, but should avoid quick decision-making, rapid changes, and multiple demands. She would benefit from regular breaks and slower pace, but is able to maintain a work pace consistent with mental demands of competitive level work. The claimant's contact with the public should be occasional and brief, no more than 30 minutes at a time. Feedback should be supportive. She can adapt to infrequent and well-explained changes in work setting and work expectations. (Tr. 23).

At step four, the ALJ determined that Caudle cannot perform her past relevant work as a floor hanger and retail sales clerk. (Tr. 28). At step five, based on the testimony of a vocational expert, the ALJ determined that, considering Ms. Caudle's age, education, work experience, and RFC, a significant number of other jobs exist in the national economy that Ms. Caudle could perform, including line machine tender. (Tr. 29). Accordingly, the ALJ determined that Ms. Caudle has not been under a disability, as defined by the Social Security Act, since January 5, 2016. (Tr. 29).

Ms. Caudle timely requested review of the ALJ's decision. (Tr. 14). Ms. Caudle submitted new evidence to the Appeals Council that postdated the ALJ's decision: medical records from Dr. William Meador dated February 22, 2017. (Tr. 8-13).

On April 11, 2017, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. Ms. Caudle filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Ms. Caudle argues (1) the ALJ erred at step two in finding Caudle's foot pain and dermatofibroma as slight abnormalities or non-severe; and (2) the AC improperly rejected Dr. Meador's evidence because it qualifies as new, material, and chronologically relevant evidence. For the reasons discussed below, the undersigned finds that the Commissioner's decision is based on substantial evidence notwithstanding Ms. Caudle's contentions.

### I. The ALJ Properly Found Severe Impairments at Step Two

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any *medically determinable physical or mental impairment* which . . . has lasted or can be expected to last for a continuous period of *not less than 12 months*." 42 U.S.C. § 423(d)(1)(A) (emphasis in original); *see* 20 C.F.R. § 404.1505(a). Both the impairment(s) and the inability to work must last for at least

7

twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 404.1509; SSR 82-52, 1982 WL 31376; *Barnhart v. Walton*, 535 U.S. 212, 217-20 (2002).

The Social Security Handbook § 601 defines a "medically determinable" physical or mental impairment as:

> an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. Objective medical evidence is signs, laboratory findings, or both. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

Social Security Administration, Social Security Handbook, § 601, available at https://www.ssa.gov/OP_Home%2Fhandbook/handbook.06/handbook-0601.html. Further, SSP 96-4p emphasizes that "[a] 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment." *See also* 20 C.F.R. §§ 404.1508 (what evidence depicts an impairment); 404.1527(a)(1) (evaluating opinion evidence); 404.1528 (defining symptoms, signs, and laboratory findings).

A diagnosis alone does not indicate a disability or limitations on a claimant's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence of [ ] impairments does not reveal the extent to which they limit [a claimant's] ability to work. . . ."); *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662-63

(11th Cir. 1987) (diagnosis does not equate to existence of impairment); *Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (while doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on Osborn's ability to work, a requisite to a finding of disability.").

As an initial matter, "step two [of the sequential process] requires only a finding of 'at least one' severe impairment to continue on to the later steps." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (*per curiam*) (citing *Jamison,* 814 F.2d at 588). Where an ALJ recognizes at least one severe impairment and proceeds to step three of the sequential evaluation process, there exists no *per se* requirement to identify additional impairments at the second step where the decision demonstrates the ALJ properly considered all impairments at subsequent steps. *Id.*; *see also Williams v. Berryhill*, No. 17-00260-N, 2018 WL 1092019, *5 (S.D. Ala. Feb. 28, 2018); *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 513-14 (11th Cir. 2017); *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853-54 (11th Cir. 2013) (any error in the severity finding rendered harmless by ALJ's later discussion of objective evidence regarding impairment and symptoms; ALJ thus performed analysis that would have been required had he determined a severe impairment at step two); *Heatly v. Comm'r of Soc. Sec.,* 382 F. App'x 823, 824-25 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe" and even if the ALJ erred by

not recognizing every severe impairment, the error was harmless since he found at least one such impairment).

Plaintiff's argument in favor of reversal rests heavily on her claims of disabling foot pain. However, given the evidence of record, the ALJ's determination that Caudle's foot pain did not constitute a severe impairment rests on substantial evidence.

The ALJ noted Caudle's history of psoriasis, dermatofibroma, gastroesophageal reflux disease, restless leg syndrome, systemic lupus, tobacco abuse, and caffeine-related disorder. However, he found Caudle failed to demonstrate any ongoing or continuous restrictions from these conditions, and the record established they were well-controlled, non-symptomatic, or of less than a 12-monh duration. Further, the conditions constituted no more than slight abnormalities not reasonably expected to produce more than minimal, if any, work-related limitations. (Tr. 20).

Regarding Caudle's foot pain, the ALJ found her testimony about the intensity, persistence, and limiting effects of the symptoms lacked corroboration in objective medical evidence, daily activities, and responses to conservative treatment. He noted Caudle lives with and takes care of her disabled son, performs household chores, and quit her last job due to the fast pace and difficulty with a co-worker. (Tr. 24). He also discussed a 2000 bilateral metatarsectomy, after which Caudle voiced complaints of foot pain. Yet, she continued to work for 15 years after the surgery. The ALJ noted Caudle's obesity may engender her aches and pains. (Tr. 26). An independent review

of the record medical evidence establishes the ALJ's determination as to Caudle's severe impairments has substantial support in the evidence.

Consulting examiner Dr. Frederick Ernst examined Caudle on October 17, 2014, and reported she had a normal gait and exhibited the ability to heel-toe walk, though she could not toe walk due to pain. (Tr. 232). Caudle exhibited pain with application of pressure to the fifth metatarsal bone. (Tr. 232). Dr. Ernst diagnosed, inter alia, status post bilateral fifth metatarsectomy with residual chronic pain syndrome. (Tr. 233). However, he opined Caudle can stand and walk up to four hours and sit up to six hours in an eight-hour workday; lift and/or carry up to 15 pounds occasionally and 10 pounds frequently; frequently reach overhead and forward, handle, finger, and feel; frequently climb stairs, stoop, crouch, kneel, and crawl; and occasionally climb ladders. (Tr. 233-34). The ALJ accorded this opinion significant weight and found it consistent with objective medical evidence. (Tr. 27).

Consulting examiner Dr. Celtin Robertson examined Caudle on March 4, 2016, at which time she complained primarily of multiple joint pain, which began with her feet but radiated to other joints and progressively worsened over the years. (Tr. 240). Dr. Robertson observed Caudle exhibited a normal gait, the ability to heel-toe walk, and no difficulty getting on and off the exam table without assistance. (Tr. 241, 242). Caudle could only squat halfway down secondary to joint pain, yet had a negative straight leg raise test for sciatica and exhibited 5/5 strength and normal muscle tone in all

11

extremities. (Tr. 242, 243). Caudle displayed no tenderness to palpation at the joints. Dr. Robertson diagnosed multiple joint pain per claimant, evidencing objective testing did not support her claims. (Tr. 243). Dr. Robertson's opinion, to which the ALJ accorded significant weight (Tr. 27), found Caudle has no limitation in her ability to stand, walk, and sit. (Tr. 243).

On April 15, 2016, Caudle complained of pain in multiple joints, shoulders, feet, lower back, and diffuse muscle pain, and reported a previous lupus diagnosis. (Tr. 359). CRNP Phillip Rogers[2] diagnosed myalgia, restless leg syndrome, and lupus. (Tr. 363-64).[3] Dr. Aprajita Jagpal examined Caudle on June 7, 2016, when she reported pain in her neck, back, legs, shoulders, and feet. She also reported diffuse pain all over her body, worsened by activity and prolonged sitting and walking. (Tr. 299). A physical examination revealed no abnormalities and normal balance. Dr. Jagpal diagnosed low back pain, cervicalgia, and restless leg syndrome. (Tr. 300-01).

---

[2] A certified registered nurse practitioner does not qualify as an "acceptable medical source" under the Social Security Regulations. *See* 20 C.F.R. § 1513(d)(1); *see also* SSR 06–3p, 2006 WL 2329939 at *3 (recognizing that nurse practitioners are medical sources that are not "acceptable medical sources"). Though information from "other sources," like a CRNP, cannot establish the existence of a medically determinable impairment, opinions from medical sources who are not technically acceptable medical sources under the Social Security regulations are important and should be evaluated in assessing the functional effects and severity of impairments. SSR 06–3p, 2006 WL 2329939 at *3. Furthermore, although the Social Security regulations do not explicitly address how to evaluate opinions from "other sources," the factors outlined in 20 C.F.R. § 404.1527 can be applied to opinion evidence from "other sources" like a CRNP. *Id.* at *4.

[3] In July 2016, Dr. Niharika Sharma determined after testing that Caudle had no underlying autoimmune condition. (Tr. 297).

Despite her claims of disabling foot pain, Caudle reported in her Function Report that she can walk a half mile before needing to rest 10 to 15 minutes. (Tr. 178). She also conveyed to Dr. Lucile Bodenheimer that she walks at least a mile three times a week, taking 10 to 15 minutes to complete the walk. (Tr. 282). Caudle uses no assistive device for walking and stated no doctor has prescribed such a device for her. (Tr. 60, 180, 232).

Despite the diagnoses indicating Caudle's foot pain, no treating or examining physician imposed restrictions on Caudle which would prevent her from performing any work. In fact, the consulting examining physicians found Caudle could perform work with some or no restrictions. Inasmuch as Caudle has not challenged the RFC assigned by the ALJ, her argument that the ALJ should have found her foot pain severe lacks merit.

Caudle also appears to fault the ALJ for finding dermatofibroma[4] to be a slight or non-severe abnormality at step two, to the extent he considered her foot pain. The medical records contain only one documentation of a dermatofibroma on Caudle's left inner thigh on June 3, 2016. Dr. Eric Baum treated the nodule with an injection. (Tr. 310-11). The record contains no mention of recurrence or other problem with this skin condition, nor any indication it limited her ability to work. Further, the

---

[4] A dermatofibroma is a "fibrous tumor-like nodule of the dermis." *Dorland's Illustrated Medical Dictionary* 452 (27th ed. 1988). It also goes by the name "benign fibrous histiocytoma." https://www.merckmanuals.com/professional/dermatologic-disorders/benign-skin-tumors,-growths,-and-vascular-lesions/dermatofibromas

13

dermatofibroma had no connection with Caudle's feet. Therefore, the ALJ committed no error by finding the dermatofibroma non-severe and only a slight abnormality. The ALJ also did not err because he identified severe impairments at step two and proceeded to step three.

## II. The Appeals Council Did Not Err in Failing to Consider New Evidence

Ms. Caudle argues that the Appeals Council improperly refused to review Dr. Meador's records solely because they were dated after the date of the decision, without considering whether the records were chronologically relevant and material. Although the court finds Dr. Meador's opinion chronologically relevant in part, inasmuch as he relied on Caudle's medical records predating the ALJ's decision, it fails to satisfy the materiality standard.

Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. §404.900(b)). The Appeals Council retains discretion to decline review of an ALJ's denial of benefits. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (2012). However, the Appeals Council must consider evidence that is (1) new, (2) material, and (3) chronologically relevant. *Ingram,* 496 F.3d at 1261 (citing 20 C.F.R. § 404.970(b)).

New evidence is material if it is relevant and probative "so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*,

14

823 F.2d 456, 459 (11th Cir. 1987) (citations omitted). Such evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (holding that the Appeals Council must evaluate the entire record, including the new and material evidence submitted to it if it relates to the period on or before the date of the ALJ hearing decision); *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1322-23 (11th Cir. 2015) (evaluation conducted after the ALJ's decision may be chronologically relevant if it pertains to a period that pre-exists the ALJ's opinion). When a claimant properly presents new evidence, and the Appeals Council denies review, it must demonstrate in its written denial that it adequately evaluated the new evidence. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735 (11th Cir. 2011) (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)).

The Appeals Council denied review in this case on April 11, 2017. In finding the newly submitted records chronologically irrelevant, the Appeals Council stated:

> We also looked at medical records from William Meador, M.D., dated February 22, 2017 (6 pages). The Administrative Law Judge decided your case through January 30, 2017. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 30, 2017.

(Tr. 2). As indicated, the Appeals Council concluded the records reflected a time period later than that considered by the ALJ. The Appeals Council did not need to give a more detailed explanation or to address each piece of new evidence individually.

15

*See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014); *White v. Comm'r of Soc. Sec. Admin.*, No. 4:16-cv-00248-JHE, 2017 WL 4246895, at *4 (N.D. Ala. Sept. 25, 2017) (finding Appeals Council explanation that "new information is about a later time" sufficiently established Appeals Council considered substance of new records); *Zanders v. Berryhill*, No. CA 16-0542-MU, 2017 WL 3710790, at *14 (S.D. Ala. Aug. 28, 2017), citing *Mitchell*, 771 F.3d at 784-85, and *Beavers*, 601 F. App'x at 822 (finding Appeals Council statement that it reviewed new evidence and concluded it related to "a later time" was sufficiently directed to materiality and/or chronological relevance and did not amount to an inadequate or perfunctory evaluation of the evidence).

Dr. Meador examined Caudle on February 22, 2017, to evaluate her foot pain. (Tr. 8). In preparing his notes, he relied on Caudle's self-report of her symptoms, as well as reviewing records from the referring facility and physicians. (Tr. 8, 11). Upon examination, Caudle displayed abnormal balance and an antalgic gait and reported pain of 10/10, yet she had normal muscle strength and reflexes, and intact sensation in all extremities. (Tr. 11). Dr. Meador noted bilateral tenderness to pressure at the fifth toe joints. (Tr. 11). After the examination, Dr. Meador diagnosed restless leg syndrome and bilateral foot pain, yet he found the source of her pain unclear. He suspected a musculoskeletal issue, but also noted the possible presence of a neuropathic or vascular component. (Tr. 11). Therefore, he recommended nerve conduction testing and electromyogram of the lower extremities and ankle brachial indices for

diagnostic purposes. Dr. Meador noted Caudle's other physician's assessment that the pain had no relation to a foot or bone problem, but stated he would highly question this opinion depending on the results of his tests. (Tr. 12). Dr. Meador concluded his report by opining "disability may be indicated" if Caudle is unable to work based on her foot problems; however, he includes no finding of disability, restrictions, or limitations attendant with Caudle's reports of foot pain. (Tr. 12).

Notably absent from Dr. Meador's report are results from any objective medical testing or any actual opinion as to Caudle's foot pain or its source. Dr. Meador also imposed no restrictions or limitations on Caudle's activities based on her foot pain. Dr. Meador based his report primarily on Caudle's statements to him and her other physician about her foot pain. He conducted a basic physical examination and noted Caudle expressed tenderness upon pressure to each little toe and exhibited an antalgic gait. Dr. Meador's notes reflect no new diagnoses and do not contain any opinion. His findings also contrast with examinations conducted prior to the ALJ's opinion, in which Caudle exhibited a normal gait and the ability to heel-toe walk, as reviewed above. Because the court finds no reasonable possibility that Dr. Meador's report would change the administrative result, his records do not constitute material evidence, and the AC properly rejected consideration of them, other than to find they addressed a time after the ALJ's decision.

## CONCLUSION

Based on the foregoing analysis, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final order in conformity with this Memorandum Opinion.

**DONE** this 31st day of August, 2018.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE